1 | MELISSA MEEKER HARNETT (Bar No. 164309)
      mharnett@wccelaw.com
2 | GREGORY B. SCARLETT (Bar No. 131486)
      gscarlett@wccelaw.com
3 | **WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.**
   | 5567 Reseda Boulevard, Suite 330
4 | Post Office Box 7033
   | Tarzana, California 91357-7033
5 | Telephone: (818) 705-6800 • (323) 872-0995
   | Facsimile:  (818) 705-8927
6 |
   | Attorneys for Plaintiffs,
7 | CLINT ESKENAZI and CAMDEN
   | BRADY, individually, and on behalf of all
8 | others similarly situated,

*WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.*
*5567 RESEDA BOULEVARD, SUITE 330*
*POST OFFICE BOX 7033*
*TARZANA, CALIFORNIA 91357-7033*

9 |
10 | **UNITED STATES DISTRICT COURT**
11 | **CENTRAL DISTRICT OF CALIFORNIA**
12 | **WESTERN DISTRICT**
13 |

14 | CLINT ESKENAZI and CAMDEN
   | BRADY, individually, and on behalf of
   | all others similarly situated,
15 |
16 |              Plaintiffs,
17 |        vs.
18 | BPI SPORTS LLC, a Florida limited
   | liability company; BPI SPORTS
19 | HOLDINGS, INC., a Florida
   | corporation; BPI SPORTS HOLDINGS
20 | LLC, a Florida limited liability
   | company; BRIAN PHARMA LLC, a
21 | Florida limited liability company;
   | BRIAN PHARMA II LLC, a Florida
22 | limited liability company; DEREK
   | ETTINGER, an individual; JAMES
23 | GRAGE, an individual; and DOES 1-
   | 50, inclusive,
24 |
   |              Defendants.

| CASE NO. CV11-10532 JHN (PJWx)
| PUTATIVE CLASS ACTION
| Assigned to the Honorable Jacqueline H. Nguyen
| Courtroom 790
| **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**
| **Date: February 27, 2012**
| **Time: 2:00 p.m.**
| **Crtrm: 790**
| Complaint Filed: 11/10/2011
| FAC Filed: 12/19/2011
| Case Removed: 12/21/2011

25 |
26 |
27 |
28 |

1016199.1

BC473388

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

**TABLE OF CONTENTS**

Page

1.   INTRODUCTION ...................................................................................................1

2.   FACTUAL SUMMARY .........................................................................................5

3.   ARGUMENT .........................................................................................................8

    A.   The Court Should Not Dismiss Plaintiffs' Deceptive Labeling and
        Advertising Claims Based On FDCA Preemption. .......................................8

        (1)   Legal standard for Rule 12(B)(6) motion to dismiss ...............................8

        (2)   It is well-established that claims under California's labeling laws and
               consumer protection statutes are not preempted by the FDCA .....................9

        (3)   Defendants rely on inapposite and outdated case law ................................14

    B.   Plaintiffs Have Adequately Demonstrated this Court has Personal
        Jurisdiction Over the Individual Defendants ...........................................17

        (1)   Legal standard for Rule 12(B)(2) motion to dismiss ...............................17

        (2)   The Individual Defendants participated in and controlled the
               wrongful conduct of the BPI Defendants ..................................................19

        (3)   Plaintiffs have adequately alleged alter ego liability as to the
               Individual Defendants. ...............................................................................21

        (4)   The case decisions cited by Defendants are not applicable here ................22

4.   CONCLUSION ......................................................................................................24

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

CASES

*American Int'l Airways v. Kitty Hawk Group,*
   834 F. Supp. 222 (E.D. Mich. 1993) ............................................. 21

*ARC Ecology v. U.S. Dep't of Air Force,*
   411 F.3d 1092 (9th Cir. 2005) ....................................................... 9

*Armstrong v. Optical Radiation Corp.,*
   50 Cal. App. 4th 580 (1997) ........................................................ 11

*Ashcroft v. Iqbal,*
   129 S. Ct. 1937 , 173 L. Ed. 2d 868 (2009) ................................. 9

*Associated Vendors, Inc. v. Oakland Meat Co.,*
   210 Cal. App. 2d 825 (1962) ....................................................... 21

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 , 127 S. Ct. 1955 (2007) ......................................... 8

*Black v. Financial Freedom Senior Funding Corp.,*
   92 Cal. App. 4th 917 (2001) ........................................................ 10

*Burger King Corp. v. Rudzewicz,*
   471 U.S. 462 (1985) ..................................................................... 18

*California v. ARC America Corp.,*
   490 U.S. 93 (1989) ....................................................................... 10

*Chang v. Chen,*
   80 F.3d 1293 (9th Cir. 1996) ....................................................... 9

*Chavez v. Blue Sky Natural Beverage Co.,*
   268 F.R.D. 365 (N.D. Cal. 2010) ................................................ 12

*Cipollone v. Liggett Group, Inc.,*
   505 U.S. 504 (1992) ..................................................................... 10

*Colt Studio, Inc. v. Badpuppy Enterprise,*
   et al., 75 F. Supp. 2d 1104 (C.D. Cal. 1999) .............................. 23

*Committee on Children's Television, Inc. v. General Foods Corp.,*
   35 Cal. 3d 197 (1983) .................................................................. 11

*Conley v. Gibson,*
   355 U.S. 41 (1957) ................................................................... 8, 22

*Consumer Justice Center v. Olympian Labs, Inc.,*
   99 Cal. App. 4th 1056 (2002) ................................................. 2, 11

*Consumers Union of U.S., Inc. v. Alta-Dena Certified*,
    4 Cal. App. 4th 963 (1992) ................................................................................ 11

*Crosby v. National Foreign Trade Council*,
    530 U.S. 363 (2000) ....................................................................................... 10

*Doe v. United States*,
    419 F.3d 1058 (9th Cir. 2005) ........................................................................... 9

*English v. General Electric Co.*,
    496 U.S. 72 (1990) ......................................................................................... 10

*Farm Raised Salmon Cases*,
    42 Cal. 4th 1077 (2008) ............................................................................ 1, 3, 12

*Farmers Ins. Exchange v. Superior Court*,
    2 Cal. 4th 377 (1992) ........................................................................................ 4

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
    896 F.2d 1542 n.19 (9th Cir. 1990) .................................................................. 9

*In re Napster, Inc. Copyright Litigation*,
    354 F. Supp. 2d 1113 (N.D. Cal. 2005) ......................................................... 22

*In re: Epogen*,
    590 F. Supp. 2d 1282 (C.D. Cal. 2008) .................................................... 16, 18

*Jackson v. Carey*,
    353 F.3d 750 (9th Cir. 2003) ............................................................................ 9

*Legacy Wireless Services, Inc. v. Human Capital, L.L.C.*,
    314 F. Supp. 2d 1045 (D. Or. 2004) ............................................................... 22

*Lopez v. Smith*,
    203 F.3d 1122 (9th Cir. 2000) ........................................................................... 9

*Maryland v. Louisiana*,
    451 U.S. 725 (1981) ....................................................................................... 10

*Medtronic, Inc. v. Lohr*,
    518 U.S. 470 (1996) ....................................................................................... 10

*Mir v. Little Co. of Mary Hosp.*,
    844 F.2d 646 (9th Cir. 1988) ............................................................................ 9

*Mutual Pharm. Co. v. Ivax*,
    Pharm., 459 F. Supp. 2d 925 (C.D. Cal. 2006) .............................................. 16

*Nader v. Allegheny Airlines*,
    426 U.S. 290 (1976) ......................................................................................... 4

*Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*,
    298 F.3d 768 (9th Cir. 2002) ............................................................................ 9

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1016199.1

iii

BC473388

*Pacific Trading Co. v. Wilson & Co., Inc.*,
    547 F.2d 367 (7th Cir. 1978)..................................................................... 11

*People v. Bestline Products, Inc.*,
    61 Cal. App. 3d 879 (1975)....................................................................... 20

*People v. Conway*,
    (1974), 42 Cal. App. 3d 875 (1974).......................................................... 19

*People v. Toomey*,
    157 Cal. App. 3d 1 (1984)................................................................... 19, 20

*PhotoMedex, Inc. v. Irwin*,
    601 F. 3d 919 (9th Cir. 2010).................................................................... 15

*Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*,
    642 F. Supp 2d 1112 (C.D. Cal. 2009)................................................... 2, 12

*Reese v. Payless Drug Stores Northwest, Inc.*,
    43 Cal. App. 4th 1317 (1995).................................................................... 11

*Scheuer v. Rhodes*,
    416 U.S. 232 (1974)..................................................................................... 9

*South Bay Creditors Trust v. General Motors Acceptance Corporation*,
    69 Cal. App. 4th 1068 (1999).................................................................... 15

*Steroid Hormone Product Cases*,
    181 Cal. App. 4th 145 (2010)...................................................................... 3

*Summit Technology, Inc. v. High-Line Medical Instruments*,
    933 F. Supp. 918 (C.D. Cal. 1996)............................................................ 16

*Systems, Inc. v. Aarotech Laboratories, Inc.*,
    160 F. 3d 1373 (Fed. Cir. 1998)................................................................ 23

*United States v. City of Redwood City*,
    640 F.2d 963 (9th Cir. 1981)....................................................................... 9

*Washington Mutual Bank v. Superior Court*,
    95 Cal. App. 4th 606 (2002)...................................................................... 10

REGULATIONS

21 U.S.C. § 321(ff)................................................................................... 13

21 U.S.C. § 321(g)(1).................................................................................. 7

21 U.S.C. § 337(a)..................................................................................... 11

21 U.S.C. § 343-1(a)(3)............................................................................. 11

21 U.S.C. 321(ff)(1).................................................................................. 13

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

21 U.S.C. 321(ff)(1)(F) ................................................................................................ 14

21 U.S.C. 343(r)(6)(A) ................................................................................................... 7

21 U.S.C. 343(r)(6)(B) ................................................................................................... 7

Cal. H&S Code § 110100(a) ........................................................................................... 3

Cal. H&S Code § 110655 ................................................................................................ 3

H&S Code § 110290 ....................................................................................................... 8

H&S Code §§ 110398 & 111440 .................................................................................... 8

H&S Code §§ 110398 & 111445 .................................................................................... 8

H&S Code §§ 110660 & 111330 .................................................................................... 8

H&S Code §§ 110770 & 111450 .................................................................................... 8

RULES

Federal Rule of Civil Procedure 8(a)(2) ........................................................................ 8

Federal Rule of Civil Procedure 8(a) ........................................................................... 22

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1. **INTRODUCTION**

A California consuming public obsessed with physical fitness and weight loss has led to a recent surge in the marketing of over-the-counter bodybuilding and weight loss "dietary supplements."  While inundating America's markets with ineffective, often untested, and sometimes dangerous products, the dietary supplement industry operates with few regulatory restrictions and little, if any, substantive oversight by the U.S. Food and Drug Administration ("FDA").  Ironically, Defendants argue in this case that federal law has totally occupied the area of dietary supplement regulation so as to preempt any state laws which seek to address dietary supplements.  However, in reality, the supplement industry is largely self-regulated and out of control.

In arguing that plaintiffs Clint Eskenazi and Camden Brady (collectively "Plaintiffs") have alleged deceptive labeling and false advertising claims which "intrude on the exclusive domain" of the FDA, defendants BPI Sports LLC, BPI Sports Holdings, Inc., BPI Sports Holdings LLC, Brian Pharma LLC and Brian Pharma II LLC (the "BPI Defendants"), and defendants Derek Ettinger and James Grage (the "Individual Defendants") (hereinafter collectively referred to as "Defendants"), misinterpret the essence of Plaintiffs' claims and fail to bring to the Court's attention the two precedential cases pivotal to any analysis of this issue.

In ruling upon the question presented here, Federal courts have looked to the California Supreme Court's opinion in *Farm Raised Salmon Cases*, 42 Cal. 4th 1077 (2008), which expressly held that consumers' false advertising and misleading labeling claims, asserted under California's Unfair Competition Act ("UCL"), Consumers Legal Remedies Act ("CLRA"), False Advertising Law ("FAL"), as based on alleged violations of California's Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), ***are not preempted*** by the federal Food, Drug and Cosmetic Act ("FDCA"), as amended by the Nutrition Labeling and Education Act of 1990 ("NLEA").  *See, e.g., Zeisel v. Diamond Foods, Inc.*, 2010 U.S. Dist. LEXIS 141941, **6-9 (N.D. Cal. Sept. 3, 2010) (following *Farm Raised Salmon* and holding that UCL may be used to

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1 enforce violations of California law, including the Sherman Law, which is identical to

2 the FDCA).

3        Correspondingly, Plaintiffs here do ***not*** assert claims for violations of the

4 FDCA or seek to enforce FDA rules and regulations.  Plaintiffs instead seek to hold

5 Defendants liable, by way claims asserted under the UCL, the FAL, and the CLRA,

6 for ***misleading labeling and false advertising*** of their products in violation of

7 California's Sherman Law.  Plaintiffs claims, as a result, are not preempted.  *See, Pom*

8 *Wonderful LLC v. Ocean Spray Cranberries, Inc.*, 642 F. Supp 2d 1112, 1121-22

9 (C.D. Cal. 2009) (Sherman Law imposes obligations identical to those imposed by the

10 FDCA, and Plaintiffs may enforce those obligations through claims asserted under

11 California's consumer protection statutes).

12        As explained by the court in *Consumer Justice Center v. Olympian Labs, Inc*.,

13 99 Cal. App. 4th 1056, 1059-66 (2002), claims of false advertising of dietary

14 supplements in violation of the UCL are ***not*** preempted by the FDCA, NLEA or the

15 Federal Trade Commission Act.  The court explained that courts may determine

16 violations of  California's Sherman law because the state law is ***identical*** to the rules

17 and remedies afforded under the FDCA.  *Consumer Justice Center*, 99 Cal. App. 4th

18 at 1059-66 ("States can enforce labeling rules which are identical to those found in

19 [the FDCA].  And while it may be a difficult task for a state court to craft injunctive

20 relief involving the labeling of a dietary supplement that is identical to the rules set

21 forth in [the FDCA], it is not an impossible task.  Relief can be afforded in this case

22 that is wholly consistent with [the FDCA].").

23        Subsequently, in *Farm Raised Salmon Cases*, the California Supreme Court

24 definitively resolved the preemption issue by adopting the rationale of the *Consumer*

25 *Justice Center Court,* holding that the FDCA does not preempt consumers' false

26 advertising and misleading labeling claims based on violations of California's

27 Sherman Law.  Citing *Consumer Justice Center,* the Supreme Court concluded that

28 states may establish food labeling requirements identical to those in the FDCA

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1   without raising an issue of preemption.  *Farm Raised Salmon*, 42 Cal. 4th at 1086

2   (Sherman Law imposes obligations identical to those imposed by the FDCA).

3           In this case, Plaintiffs assert claims under the UCL, CLRA, FAL, California

4   statutory and common law warranty laws, and for common law unjust enrichment,

5   based upon, *inter alia*, Defendants' violations of the labeling requirements of

6   California's Sherman Law.  Significantly, California's Sherman Law [Cal. Health &

7   Safety ("H&S") Code § 109875, *et seq.*], which Plaintiffs seek to enforce here,

8   expressly *incorporates* the food product labeling requirements of the FDCA,[1] and thus

9   imposes labeling obligations on product manufacturers **substantially identical** to

10  those imposed by the FDCA and FDA implementing regulations.

11          Plaintiffs do not seek to enforce FDA regulations, but rather assert claims

12  based on California's law which mirrors such regulations.  Plaintiffs do not ask this

13  Court to interpret any ambiguous FDA regulations; but rather to determine if

14  Defendants have harmed consumers by violating clear and definitive regulations

15  adopted by the Sherman Act.  Plaintiffs merely seek to preclude Defendants from

16  utilizing deceptive and misleading labeling and advertising which omit and/or fail to

17  adequately inform consumers that DMAA is a potentially dangerous synthetic

18  stimulant – a disclosure which clearly is material to a consumer's decision to

19  purchase the product.  *See, e.g., Steroid Hormone Product Cases*, 181 Cal. App. 4th

20  145 (2010) (Second District Court of Appeal reversed trial court order denying class

21  certification holding that, to establish causation and injury under the UCL and

22  CLRA, an individualized inquiry into whether defendant's failure to inform

23  consumers that its product contained illegal controlled substances was unnecessary

24  because, when purchasing a product, a reasonable person would likely find it

25  _____

26  [1] *See* Cal. H&S Code § 110100(a) (incorporating all federal food labeling regulations); Cal. H&S
    Code § 110655 (providing any food is misbranded if its nutrition labeling does not conform to
27  FDCA requirements).

28

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  material that the sale of the product is illegal).  Courts regularly determine whether

2  such omissions are deceptive or misleading.  "The standards to be applied in an

3  action for fraudulent misrepresentation are within the conventional competence of

4  the courts, and the judgment of a technically expert body is not likely to be helpful

5  in the application of these standards to the facts of this case." *Farmers Ins.*

6  *Exchange v. Superior Court*, 2 Cal. 4th 377, 390 (1992) (quoting *Nader v. Allegheny*

7  *Airlines*, 426 U.S. 290, 305-06 (1976)).[2]

8          Defendants also turn a blind eye to the allegations as stated in the FAC in

9  order to challenge the Court's ability to assert personal jurisdiction.  The Individual

10  Defendants conveniently ignore Plaintiffs' allegations that each of the Defendants,

11  including the Individual Defendants, is the alter ego of each of the other Defendants

12  (FAC, ¶ 24), that each of the Defendants, including the Individual Defendants,

13  "planned and participated in and furthered a common scheme by means of false,

14  misleading and deceptive advertising and labeling representations to induce

15  consumers to purchase" Defendants' dietary supplements (FAC, ¶ 27), and that each

16  of the Defendants, including the Individual Defendants, "aided and abetted and

17  knowingly assisted each other in their wrongful conduct" as alleged in the FAC.

18  This Court thus can and should assert personal jurisdiction over the Individual

19  Defendants.

20  _____

21  [2] On February 6, 2012, the day this opposition brief was due, counsel for Plaintiffs offered to
22  stipulate that if Defendants would withdraw the Motion to Dismiss, Plaintiffs would agree to
    amend the First Amended Complaint ("FAC").  Plaintiffs contend that the FAC already clearly
23  sets forth Plaintiffs' claims, as explained in this Opposition. Yet, in an effort to compromise
    pursuant to the parties' continuing obligation to meet and confer so as to avoid unnecessary
24  expenditures of the Court's resources, Plaintiffs hoped to alleviate Defendants' apparent confusion,
    as revealed by Defendants' misinterpretation of Plaintiffs' allegations in their Motion.  Defendants
25  refused to so stipulate absent an opportunity to first review any amended complaint.  However,
    because Plaintiffs' proffered stipulation was conditioned upon Defendants' withdrawal of this
26  Motion, which was not provided, a proposed amended complaint has not yet been drafted.
27  Whether an amendment will even be necessary in light of Plaintiffs' Opposition, must therefore be
    left to this Court to determine.

28

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

2.   **FACTUAL SUMMARY**

Defendants manufacture, distribute, market, and sell a variety of purported dietary supplements, including "1.M.R" powder and tablets, "RoxyLean ECA" and "Rx6"(collectively, the "Products").  1.M.R is marketed as a pre-workout bodybuilding supplement.  RoxyLean and Rx6 are marketed as "fat burning" weight loss supplements.  The Products contain an amphetamine-like stimulant that has potentially life-threatening side effects.  This ingredient, which is supposedly derived from the oil of the geranium plant, is known by many names, including "1,3 Dimethylamylamine," "Methylhexanamine," and "Geranamine" (hereinafter referred to as "DMAA").  At the time Plaintiffs purchased and used the Products, they were unaware that DMAA is a potentially dangerous stimulant, the use of which is banned by several athletic organizations, and sale of which is completely prohibited in certain countries.  (FAC, ¶ 1.)

DMAA was patented by Eli Lilly & Company in 1944 and later marketed, beginning in 1971, under the trademark "Forthane," as drug for use as a nasal decongestant and as a treatment for hypertrophied or hyperplasic oral tissues.  DMAA is a vasoconstrictor and central nervous system stimulant which is on the World Anti-Doping Agency ("WADA") and Major League Baseball ("MLB") lists of banned substances.  The sale of DMAA is totally prohibited in Canada and New Zealand.  Recently, DMAA has gained popularity with young people as a designer drug used in "party pills."  (FAC, ¶ 2.)  Defendants failed to inform consumers that DMAA is a dangerous central nervous system stimulant which is banned by the WADA, MLB, Canada and New Zealand, and that using the Products can cause consumers to test positive for an illegal substance and/or amphetamine use.  (FAC, ¶ 3.)

Though DMAA is claimed to be an extract of geranium oil, recent studies have concluded that there is no DMAA whatsoever in geranium oil, that DMAA is not extracted from geranium oil, and that all DMAA currently on the market is a

wholly synthetic substance entirely manufactured in laboratories. The DMAA in Defendants' Products is purely synthetic. Because DMAA is a wholly synthetic substance, it is not a "dietary ingredient," and Defendants' Products are not "dietary supplements," as those concepts are unambiguously defined by applicable FDA regulations incorporated into California's Sherman Law. (FAC, ¶ 4.)

Recent studies have shown that DMAA is not a natural constituent of the geranium plant, and that all DMAA is synthetic. In fact, NSF International, a world leader in standards development and product certification for over 65 years, and widely recognized for its scientific and technical expertise in product certification, has publically stated that it has tested geranium oil down to a parts per billion screen, and DMAA is not derived from natural geranium oil; it is a synthetic compound and not a natural constituent of the botanical geranium. (FAC, ¶ 35. Exs. 7-8.) Nevertheless, Defendants fail to inform consumers that the Products contain a dangerous synthetic component which can not be legally marketed over-the-counter pursuant to the definition of a dietary supplement as incorporated into the Sherman law. (FAC, ¶ 6.)[3]

As a further part of the deceptive marketing scheme for the Products, Defendants make false, misleading, and unsubstantiated claims regarding the safety and effectiveness of the Products -- claims that Defendants know are completely without merit or scientific substantiation -- in order to lure unsuspecting consumers into buying the Products. (FAC, ¶ 8.) Under the FDCA, only FDA-approved "drugs" may be marketed by making claims that the product is a treatment or cure

---

[3] Also, because DMAA was previously patented and marketed by Ely Lilly as a drug for the treatment of various medical conditions and disorders, it cannot now be considered a dietary ingredient. (FAC, ¶ 5.) The FDCA clearly provides that if an article has been authorized for investigation as a new drug and such investigations are made public prior to such an article being sold as a dietary supplement, the article may not be considered a dietary supplement. *See* 21 U.S.C. 321(ff)(3)(B)(i)-(ii). (FAC, § 40.)

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1   for a specific disease or condition or the symptoms of a disease or condition

2   ("disease claims"), or by claiming the product will affect the structure or functions

3   of the human body ("structure/function claims").  *See* 21 U.S.C. § 321(g)(1)  (FAC,

4   ¶ 36.)  Dietary supplement labeling may include "non-disease claims" about the

5   supplement's purported effect on the structure or function of the human body

6   (structure/function claims) provided that certain requirements are met.  *See* 21

7   U.S.C. 343(r)(6)(A).  One of these requirements is that the manufacturer must have

8   substantiation that the claims are truthful and not misleading.  *See* 21 U.S.C.

9   343(r)(6)(B).  (FAC, ¶ 37.)  Many of Defendants' efficacy claims regarding the

10  Products are essentially claims that the Products can affect the structure and function

11  of the body.[4]

12       Plaintiffs bring this putative class action to enjoin Defendants from selling the

13  Products as dietary supplements without adequately informing consumers that the

14  DMAA contained in the Products is a purely synthetic and potentially dangerous

15  stimulant, banned by certain athletic organizations and in some countries, and which

16  can cause adverse side effects.  Plaintiffs further seek to enjoin Defendants from

17  making illegal and deceptive advertising and marketing "structure/function" claims

18  regarding the effectiveness and safety of the Products.  Plaintiffs also seek to

19  recover restitution from Defendants in the amount of the total funds expended by

20  Plaintiffs and other putative class members to purchase the Products.  (FAC, ¶ 9.)

21       Plaintiffs further allege that, under California's Sherman Law, Defendants

22

---

23  [4] For example, the labeling for RoxyLean claims that use of that Product provides
24  "PHARMACOLOGICAL WEIGHT LOSS" and "Medi-Biological Weight Loss."  The labeling
    for Rx6 claims the Product provides "ULTRA CONCENTRATED FAT LOSS," is a
25  "THERMOGENIC ENERGIZER," an "Adipose Tissue Metabolic Regulator," and has a "6-in-1
    Fat Burning Blend (Proprietary)"  Moreover, the labeling for 1.M.R. asserts that the Product
26  provides "INTENSE NON-STOP VASCULARITY & ENERGY."  (FAC, ¶ 36, Exs. 3-5.)
    However, Defendants do not have scientific substantiation to support these structure/function
27  claims made by Defendants regarding the Products.  (FAC, ¶ 37.)

28

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1   have "misbranded" the Products as "dietary supplements."  A product is

2   "misbranded" if its labeling is "false or misleading in any particular."  H&S Code §§

3   110660 & 111330.[5]  It is a violation of the Sherman Law for any person to (1)

4   misbrand any food or drug (H&S Code §§ 110398 & 111445), (2) manufacture, sell,

5   deliver, hold, or offer for sale any food or drug that is misbranded (H&S Code §§

6   110398 & 111440), or (3) receive in commerce any food or drug that is misbranded,

7   or deliver or proffer it for delivery (H&S Code §§ 110770 & 111450).  Defendants'

8   violations of the UCL, FAL and CLRA result, in part, by virtue of Defendants'

9   "misbranding" under the Sherman Law.  (FAC, ¶ 11.)

10   ### 3.   ARGUMENT

11   **A. The Court Should Not Dismiss Plaintiffs' Deceptive Labeling**

12   **and Advertising Claims Based On FDCA Preemption.**

13   *(1)  Legal standard for Rule 12(B)(6) motion to dismiss.*

14   Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may

15   bring a motion to dismiss for failure to state a claim upon which relief can be

16   granted.  The Federal Rules require only that a plaintiff provide "a short and plain

17   statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P.

18   8(a)(2).  Plaintiff is not required to set forth specific facts; the allegations of the

19   complaint need only "'give the defendant fair notice of what the . . . claim is and the

20   grounds upon which it rests.'"  *Conley v. Gibson*, 355 U.S. 41, 47 (1957); *see also*

21   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007) (court

22   may not dismiss claims under Rule 12(b)(6) if plaintiff alleges "enough facts to state

23

24   [5] "In determining whether the labeling or advertisement of a food, drug, device, or cosmetic is

25   misleading, all representations made or suggested by statement, word, design, device, sound, or

26   any combination of these, shall be taken into account.  The extent that the labeling or advertising

27   fails to reveal facts concerning the food, drug, device, or cosmetic, or consequences of customary
     use of the food, drug, device, or cosmetic, shall also be considered."  H&S Code § 110290.  (FAC,
     ¶ 11.)

28

1   a claim to relief that is plausible on its face").

2       The scope of review on a Rule 12(b)(6) motion to dismiss is limited to the

3   contents of the complaint, exhibits submitted with the complaint, and matters of

4   which the Court may take judicial notice.  *See Hal Roach Studios, Inc. v. Richard*

5   *Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990); *Mir v. Little Co. of Mary*

6   *Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988).  This Court must accept as true all

7   material allegations in the FAC, and any reasonable inferences to be drawn from

8   them.  *See Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005); *ARC Ecology*

9   *v. U.S. Dep't of Air Force*, 411 F.3d 1092, 1096 (9th Cir. 2005); *Oki Semiconductor*

10  *Co. v. Wells Fargo Bank, Nat. Ass'n*, 298 F.3d 768, 772 (9th Cir. 2002).  In other

11  words, the allegations must be plausible on the face of the complaint.  *See Ashcroft*

12  *v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

13      The question presented on a motion to dismiss, whether brought under Rule

14  12(b)(6) or 12(b)(2), is not whether the plaintiff will ultimately prevail, but whether

15  he or she should be allowed to present evidence in support of his or her claims.

16  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  Even if the plaintiff's chances of

17  recovery appear remote from the face of the pleadings, the Court must allow the

18  plaintiff to develop his or her case.  *United States v. City of Redwood City*, 640 F.2d

19  963, 966 (9th Cir. 1981).  If the Court grants the motion to dismiss, it should also

20  grant leave to amend "even if no request to amend the pleading was made, unless it

21  determines that the pleading could not possibly be cured by the allegation of other

22  facts."  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000); *see also Jackson v.*

23  *Carey*, 353 F.3d 750, 758 (9th Cir. 2003) [citing *Chang v. Chen*, 80 F.3d 1293, 1296

24  (9th Cir. 1996)].

25          *(2)  It is well-established that claims under California's*

26                *labeling laws and consumer protection*

27                *statutes are not preempted by the FDCA.*

28      The U.S. Supreme Court has held that federal preemption should be narrowly

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  construed, and thus there is a presumption against federal preemption of state laws.

2  *See Cipollone v. Liggett Group, Inc.* 505 U.S. 504, 523 (1992); *Maryland v.*

3  *Louisiana*, 451 U.S. 725, 746 (1981).  In areas traditionally regulated by states, such

4  as the exercise of a state's police powers, Congress's intent to preempt state law

5  must be "clear and manifest."  *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996).

6  State laws such as California's consumer protection statutes, which arise out of the

7  state's inherent police powers, are thus subject to a strong presumption against

8  preemption.  *See California v. ARC America Corp.*, 490 U.S. 93 (1989); *see also*

9  *Washington Mutual Bank v. Superior Court*, 95 Cal. App. 4th 606, 613 (2002); *Black*

10  *v. Financial Freedom Senior Funding Corp.*, 92 Cal. App. 4th 917, 926 (2001).  The

11  party asserting federal preemption has the burden to demonstrate it exists.  *See ARC*

12  *America*, 490 U.S. at 101; *Medtronic*, 518 U.S. at 485.  Defendants have not

13  satisfied their burden here.

14      A Congressional intent to preempt state law may be stated expressly, or it

15  may be implied when a federal law demonstrates an intent to "occupy the field," or

16  if "a state law conflicts with a federal law ."  *See Crosby v. National Foreign Trade*

17  *Council*, 530 U.S. 363, 372 (2000).  Congressional intent to occupy the field "may

18  be inferred from a 'scheme of federal regulation . . . so pervasive as to make

19  reasonable the inference that Congress left no room for the States to supplement it,'

20  or where an Act of Congress 'touch[es] a field in which the federal interest is do

21  dominant that the federal system will be assumed to preclude enforcement of state

22  laws on the same subject.'"  *English v. General Electric Co.*, 496 U.S. 72, 79

23  (1990).  Conflict preemption exists where state law conflicts with federal law so that

24  compliance with both the state and federal laws is impossible, or where the state law

25  "'stands as an obstacle to the accomplishment and execution of the full purposes and

26  objectives of Congress'".  *Crosby*, 530 U.S. at 373.

27      The FDCA is devoid of language that expressly preempts state laws.  Rather,

28  the FDCA merely precludes a private right of action to enforce or restrain a

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  violation of the FDCA.  *See* 21 U.S.C. § 337(a); *see also Pacific Trading Co. v.*

2  *Wilson & Co., Inc.*, 547 F.2d 367, 370 (7th Cir. 1978); *Reese v. Payless Drug Stores*

3  *Northwest, Inc.*, 43 Cal. App. 4th 1317, 1324-25 (1995).  It is well-established that

4  the FDCA does not expressly preempt state laws or claims involving false

5  advertising.  *See Reese*, 43 Cal. App. 4th at 1324-25; *Consumers Justice Center*, 99

6  Cal. App. 4th at 1059-66.  Furthermore, such preemption cannot be implied.

7  Congress did not intend for the FDCA to "occupy the entire field" of consumer

8  protection with respect to food and drugs.

9  　　Some of the most prominent California cases interpreting the UCL involve

10  food labeling matters also covered by the FDCA.  *See, e.g.*, *Committee on*

11  *Children's Television, Inc. v. General Foods Corp.*, 35 Cal. 3d 197 (1983) (unfair

12  competition claims allowed against manufacturers of sugared cereals); *Consumers*

13  *Union of U.S., Inc. v. Alta-Dena Certified*, 4 Cal. App. 4th 963 (1992) (state court

14  had power under UCL to order disclaimers and warning labels on containers of raw

15  milk).  Several California cases have specifically held that the UCL is the proper

16  statute for California state law claims involving FDCA issues.  *See Consumer*

17  *Justice Center*, 99 Cal. App. 4th at 1058-60; *Armstrong v. Optical Radiation Corp.*,

18  50 Cal. App. 4th 580, 595 (1997).  Logic dictates that, since Congress has provided

19  in the FDCA that states may enact labeling laws "identical" to the provisions of the

20  FDCA (*see* 21 U.S.C. § 343-1(a)(3)), Congress would <u>not</u> then preclude states from

21  entertaining claims to redress violations of those states' conforming labeling laws.

22  　　The California Supreme Court's rationale in the *Farm Raised Salmon* case,

23  *supr*a, conclusively establishes that there is no preemption here.

24  　　　Plaintiffs do not seek to enforce the FDCA; rather, their deceptive
marketing claims are predicated on violations of obligations

25  imposed by the Sherman Law, something that state law
undisputedly allows.  [Citations omitted.]  That the Sherman Law

26  imposes obligations identical to those imposed by the FDCA . . .
does not substantively transform plaintiffs' action into one seeking

27  to enforce federal law.  Rather, it merely reflects Congress's
considered judgment that states should uniformly regulate food

28  labeling using identical standards.

*Farm Raised Salmon*, 42 Cal. 4th at 1095; *see also Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365 (N.D. Cal. 2010) (state law claims arising from false or misleading labels are not expressly preempted by the FDCA).  Here, Plaintiffs also seek to enforce California labeling laws and consumer protection statutes which set forth rules and remedies identical to the false advertising and false labeling rules enacted under the FDCA and NLEA.

In *POM Wonderful*, the district court followed *Farm Raised Salmon* in holding that UCL and FAL deceptive labeling claims based upon the Sherman Law were not preempted because such claims are "unrelated to the FDA regulations." *POM Wonderful*, 642 F. Supp. 2d at 1122.  Citing *Farm Raised Salmon*, the district court explained that, although California's consumer protection statutes may not be used to enforce violations of FDA regulations, the state statutes may be used to enforce violations of California's Sherman Law, which has labeling provisions identical to those in the FDCA.  *Id.*

Based upon an entirely different analysis, the *POM Wonderful* court further held that Plaintiff also stated a valid false advertising claim under the federal Lanham Act, which is not at issue here.  The court concluded that, while the plaintiff could not seek to enforce the FDCA through the Lanham Act, plaintiff's claim that defendant misrepresented the primary ingredients in its juice product on the product labeling did not rely on a determination by the FDA or an interpretation of FDA regulations.  *Id.* at 1119.  The court explained that plaintiff's claim that defendant misrepresented the ingredients was a "'readily verifiable" allegation which "does not directly or indirectly usurp the FDA's role, because determining the primary ingredients of the Beverage and whether Defendant's representations are misleading is not contingent on a decision of fact by the FDA or the enforcement of its regulations."  *Id.*

Notably, the *POM* Wonderful court applied the "readily verifiable" allegation analysis only to plaintiff's federal Lanham Act claim, and not to the plaintiffs claims

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1   under California law.  In recognizing this distinction, the court implicitly

2   differentiated a false advertising claim based on California's consumer protection

3   statutes and arising out of the Sherman Law, from a claim based upon the federal

4   Lanham Act which might intrude on FDCA enforcement matters.  Whereas the

5   former is not preempted, in certain situations, the latter could be precluded.  When

6   analyzing a claim arising out of violations of the Sherman Law, unlike the Lanham

7   Act, there is no need to inquire about FDA regulations, or whether resolution of the

8   claims might require the court to enforce or interpret FDA regulations.  Because

9   Plaintiffs here do not assert a Lanham Act claim, Defendants' attempt to apply the

10  "readily verifiable" analysis to Plaintiffs' state law claims is misplaced.

11

12          Defendants, furthermore, do not identify what specific provisions of the

13  FDCA they contend evidence a "clear and manifest" intent by Congress to preempt

14  these California laws.  Instead, citing inapposite case authority, Defendants assert

15  that under the Dietary Supplement Health and Education Act of 1994 ("DSHEA") a

16  supplement manufacturer is responsible for dealing with unsafe supplements after

17  such supplements reach the market, and that the DHSEA imposes a duty on the

18  FDA "to keep adulterated dietary supplements off the market" and to determine

19  whether a dietary supplement is adulterated."  (Motion, 5:1-7, 10-15.)  Defendants

20  do not, however, explain how the regulatory provisions of the DSHEA evidence a

21  Congressional intent to occupy the entire field of dietary supplement regulation.

22          In October of 1994, the FDCA was amended by enactment of the DSHEA,

23  which defined the terms "dietary supplement" and "dietary ingredient" (21 U.S.C. §

24  321(ff)).[6]   As acknowledge by Defendants in their Motion, under the DHSEA, a

25  _____

26  [6] The FDCA clearly defines a dietary supplement as "a product (other than tobacco) intended to
    supplement the diet" that contains one or more enumerated "dietary ingredients."  21 U.S.C.
27  321(ff)(1).  The dietary ingredients in such "supplements" may include a number of enumerated
    naturally occurring substances; such as vitamins, minerals, herbs or other botanicals, amino acids,
28  (footnote continued)

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

1   supplement manufacturer is responsible for determining prior to marketing that the

2   dietary supplement is safe, and that any representations or claims made are

3   substantiated by adequate evidence showing that the claims are not false or

4   misleading.  The DHSEA does not require FDA approval of a dietary supplement

5   before being marketed.  Thus, the supplement manufacturer essentially has sole

6   responsibility for ensuring its product is safe and effective as represented.  In other

7   words, supplement manufacturers are essentially self-regulated.

8           (3)     *Defendants rely on inapposite and*

9                   *outdated case law.*

10          In the face of overwhelming case authority rejecting preemption in cases like

11  the instant action, Defendants nevertheless make the incredulous argument that

12  "[t]he only time a private plaintiff is permitted to bring an action against a maker of

13  a dietary supplement based on at he product's alleged danger or false labeling is

14  where the FDA has already made a finding or where the alleged falsity is not

15  debatable."  (Motion, 10:4-7.)  As support for this patently erroneous proposition,

16  Defendants cite several inapposite and outdated case decisions.

17          For example, Defendants place great emphasis on the decision in *Aaronson v.*

18  *Vital Pharmaceuticals, Inc.*, 2010 U.S. Dist. LEXIS 14160 (S.D. Cal. 2010).

19  However, *Aaronson* does not even address the issue of preemption.  In fact, the

20  district court in that case *acknowledged* that preemption did not apply.  *Id.* at **5-6,

21  fn. 2.  The case did hold that the doctrine of primary jurisdiction precluded the

22  plaintiff's claims.  Although Defendants do not argue primary jurisdiction in the

23  instant case, application of that doctrine would also be inappropriate here.[7]  In any

---

25  and substances such as enzymes, organ tissues, glandulars, and metabolites. Dietary supplements
26  can also be extracts or concentrates.  *Id.*  A purely synthetic substance, however, cannot be a
    dietary ingredient.  21 U.S.C. 321(ff)(1)(F).  (FAC, ¶ 34, Ex. 6.)

27  [7] "The doctrine of primary jurisdiction 'advances two policies: it enhances court decision making
28  and efficiency by allowing courts to take advantage of administrative expertise, and it helps assure
    (footnote continued)

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  event, unlike Plaintiffs here, the *Aaronson* plaintiff sought an injunction forcing the

2  defendant to take the disputed energy drink off the market.  *Id.* at **8-9.

3      Defendants also rely heavily on the Ninth Circuit decision in *PhotoMedex,*

4  *Inc. v. Irwin*, 601 F. 3d 919, 921-22 (9th Cir. 2010).  However, Defendants' reliance

5  on *PhotoMedex* is similarly misplaced.  In that case, the plaintiff asserted claims

6  under the Lanham Act and California law for false advertising and unfair

7  competition with respect to the defendants' marketing of a laser medical devise.

8  The Ninth Circuit allowed portions of plaintiff's claims to proceed, but held that

9  claims which would require litigation of the alleged underlying FDA violation were

10  preempted.  *Id.* at 924.  The *PhotoMedex* defendant marketed an FDA approved

11  laser medical device licensed from the plaintiff.  Plaintiff argued that defendant's

12  significant modifications of the device required independent FDA approval.  The

13  Court of Appeals concluded that plaintiff's Lanham Act and state law claims were

14  preempted to the extent the claims required the court to decide whether defendant's

15  modified device required FDA approval prior to marketing, a determination which

16  had yet to be made, and could only be made, by the FDA.  *Id.* at 924-31.  In

17  contrast, resolution of Plaintiffs' claims here would not require a determination that

18  only the FDA can make and has not made.  Rather, the court need only apply

19  labeling standards set forth in existing FDA regulations, standards regarding product

20

21  _____

22  uniform application of regulatory laws.'"  *South Bay Creditors Trust v. General Motors Acceptance Corporation*, 69 Cal. App. 4th 1068, 1081-82 (1999) (application of primary

23  jurisdiction doctrine inappropriate where factual and legal issues raised by the claims were not beyond the usual competence of the court).  Here, this Court certainly has the expertise to

24  adjudicate claims of deceptive advertising under California's unfair competition and consumer protection laws based on violations of California's Sherman Law.  Courts have considerable

25  discretion and flexibility to <u>avoid</u> application of the primary jurisdiction doctrine.  *Id.* Significantly, the proper procedure in applying the doctrine of primary jurisdiction is not to

26  <u>dismiss</u> the action, but to <u>stay</u> the action pending the administrative agency's resolution of issue.

27  *South Bay Creditors Trust*, 69 Cal. App. 4th at 1081.  Thus, for this reason also, Defendants' reliance on *Aaronson* as support for their motion to dismiss is misplaced.

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

safety and efficacy which are well-established in the scientific community, and familiar standards governing misleading and deceptive advertising statements.

Defendants also cite several case decisions, including two pre-*Farm Raised Salmon* California district court decisions (*see Summit Technology, Inc. v. High-Line Medical Instruments*, 933 F. Supp. 918 (C.D. Cal. 1996) and *Mutual Pharm. Co. v. Ivax Pharm.*, 459 F. Supp. 2d 925 (C.D. Cal. 2006)) one post-*Farm Raised Salmon* district court decision which fails to even mention that Supreme Court decision (*see In re: Epogen*, 590 F. Supp. 2d 1282 (C.D. Cal. 2008)), which actually ***reject*** preemption of state law false and deceptive labeling claims, but, *according to Defendants*, did so only because the FDA had already taken relevant action or the courts were not required to interpret and apply FDA standards governing labeling. (Motion, 10:9-28, 11:1-28.)  However, contrary to defendants' skewed characterization, these cases merely hold that plaintiffs may not use other federal laws (such as the Lanham Act or RICO) or state consumer protection laws as vehicles for asserting private causes of action directly based on violations of the FDCA.  The cases go on to distinguish situations, such as the situation here, where the plaintiff merely '"refers to or relies on a FDA regulation"' setting forth an applicable labeling standard.  *See, e.g., In re: Epogen*, 590 F. Supp. 2d at 1291 (fact that defendants' allegedly false labeling statements made to promote prohibited off-label use of a drug approved by the FDA for treatment of anemia did not give rise to preemption; plaintiff may rely '"on the FDA regulation merely to establish the standard of duty which defendants allegedly failed to meet."').

To the extent that Defendants purport to rely on these cases as support for the proposition that Plaintiffs cannot bring deceptive labeling claims because the FDA has not specifically addressed Defendants' particular Products or their components, such reliance is unjustified.  As established by the case authorities cited herein, Plaintiffs may properly assert false and deceptive labeling claims against Defendants with reliance upon the FDCA and FDA labeling regulations to establish the standard

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

1  of duty (which have been incorporated into California's Sherman Law).

2      Again, this case does not specifically hinge on the FDA's possible prohibition

3  against the use of DMAA in dietary supplements or an FDA determination that

4  DMAA is a drug.  Plaintiffs do not seek a blanket ban on Defendants' use of DMAA

5  or their marketing and sale of the Products.  Rather, Plaintiffs merely seek to

6  preclude Defendants from utilizing deceptive and misleading labeling and

7  advertising, in violation of California's CLRA, UCL, FAL and Sherman Law, which

8  omits and/or fails to adequately inform consumers that DMAA is a potentially

9  dangerous synthetic stimulant. For example, in each cause of action in the FAC

10  seeking injunctive relief and in the prayer for relief, Plaintiffs merely seek an order

11  of this Court enjoining Defendants from **continuing to engage in unlawful, unfair,**

12  **or deceptive business practices and any other act prohibited by law**.  (FAC, ¶¶

13  66, 74, 81, 89.)

14      In other words, this case does not turn on matters which involve technical

15  expertise beyond the competency of this Court or which require interpretation of

16  ambiguous regulations.  FDA rules and regulations governing dietary supplements

17  <u>**clearly**</u> provide that: (1) dietary supplement manufacturers must be able to

18  demonstrate that their products are safe; (2) synthetic substances cannot be "dietary

19  ingredients;" (3) dietary supplements cannot make "structure/function claims"

20  without adequate scientific substantiation; (4) substances previously approved for

21  use as drugs cannot later be used as an ingredient in dietary supplements; and (5) the

22  labeling for dietary supplements cannot be deceptive and misleading.

23      **B. Plaintiffs Have Adequately Demonstrated this Court has**

24      **Personal Jurisdiction Over the Individual Defendants.**

25          *(1)    Legal standard for Rule 12(B)(2)*

26              *motion to dismiss.*

27      A party bringing an action bears the burden of demonstrating that jurisdiction

28  is appropriate.  *See Britesmile, Inc., et al. v. Discus Dntal, Inc., et al.*, 2005 U.S.

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1   Dist. LEXIS 37704, **9-10 (N.D. Cal. May 5, 2005).  In determining jurisdiction,

2   the court must base its decision on the written materials and declarations submitted

3   by the parties and consider whether those materials make a *prima facie* showing of

4   personal jurisdiction.  *Id.*  "In making that determination, **the Court must accept**

5   **those allegations in [the complaint] that are not controverted to be true**."  *Id.*

6   (emphasis added).  "Any conflicts between the parties over statements contained in

7   affidavits must be resolved in [plaintiff's] favor."  *Id.*

8        Here, Plaintiffs allege in the FAC that the corporate BPI Defendants directed

9   their wrongful marketing and sales activities at the state of California, and that the

10  Individual Defendants controlled and directed the wrongful conduct of the BPI

11  Defendants, personally participated in and aided and abetted that wrongful conduct,

12  and, moreover, are the alter egos of the BPI Defendants.  Plaintiffs thus have alleged

13  that the Individual Defendants are personally liable and have alter ego liability for

14  the wrongful conduct of the BPI Defendants in California.  The Individual

15  Defendants have presented no evidence whatsoever to controvert Plaintiff's

16  allegations.  The Individual Defendants merely offer their own declarations stating

17  that they have not had any personal contact with California.  Because the allegations

18  in the FAC are uncontroverted, Plaintiffs have sufficiently demonstrated that this

19  Court may properly assert specific personal jurisdiction over the Individual

20  Defendants under California's long-arm jurisdiction statutes based on the BPI

21  Defendants' contacts with California.[8]

22  _____

23  [8] *See Britesmile*, 2005 U.S. Dist. LEXIS 37704, at *19 (citing *Burger King Corp. v. Rudzewicz*,

24  471 U.S. 462 (1985) ("To evaluate the nature and quality of a defendant's contacts for the
    purposes of specific jurisdiction, courts use a three-part test: (1) some action must be taken
    whereby the defendant purposefully avails itself of the privilege of conducting activities in the

25  forum, thereby invoking the benefits and protections of the forum's laws; (2) the claim must arise
    out of or result from the defendant's forum-related activities; and (3) exercise of jurisdiction must

26  be reasonable.")  The burden of demonstrating that an otherwise proper assertion of jurisdiction is
    constitutionally unreasonable rests with the party over whom jurisdiction is sought.  *See Burger*

27  *King*, 471 U.S. at 475-77.

28

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

(2)   *The Individual Defendants participated*
*in and controlled the wrongful conduct*
*of the BPI Defendants.*

An individual defendant may be held personally liable for violations of California's consumer protection laws by a corporation or other business entity where the individual directs, controls or participates in the wrongful conduct of the entity.  *See People v. Toomey*, 157 Cal. App. 3d 1, 14-15 (1984); *In re: Jamster Marketing Litigation*, 2009 U.S. Dist. LEXIS 43592, **24-27 (2009).[9]

In the FAC, Plaintiffs allege that defendant Ettinger is "an officer, managing agent and/or principal of BPI and/or one or more of the BPI Affiliates."  (FAC, ¶ 21.)  Plaintiffs also allege that defendant Grage is "an officer, managing agent and/or principal of BPI and/or one or more of the BPI Affiliates."  (FAC, ¶ 22.) Plaintiffs thus have alleged that the Individual Defendants control the corporate affairs, and wrongful conduct, of the BPI Defendants.

In *Toomey,* the Court of Appeal held that the defendant's position as president and operating officer of the corporate entity, and his control and operation of the business, made him liable under the UCL and FAL for the misleading solicitations made by his employees. *Toomey,* 157 Cal. App. 3d at 15.  *Toomey* is directly applicable to the instant case, as the Individual Defendants are the corporate officers and owners of the BPI Defendants and control the operations of the BPI Defendants, which include the false representations regarding the nature, efficacy, and safety of the Products.

---

[9] In *Toomey*, the California Court of Appeal also pointed out that corporate officers having control over the operation of corporate business could be held personally responsible under the UCL and FAL for "the acts of subordinates done in the normal course of business."  *Toomey,* 157 Cal. App. 3d at 15 [citing *People* v. *Conway* (1974), 42 Cal. App. 3d 875, 885-86 (1974)](defendant was in a position to control the activities of a car dealership and therefore could be held criminally liable for false advertising).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1   Of course, if a defendant, individual or corporate, *directly participates* in

2   wrongful conduct, the defendant clearly has personal liability. *Toomey,* 157 Cal.

3   App. 3d at 14.  Here, Plaintiffs further allege that, "[i]n committing the wrongful

4   acts alleged herein," each of the Defendants, including the Individual Defendants,

5   "planned and participated in and furthered a common scheme by means of false,

6   misleading and deceptive advertising and labeling representations to induce

7   consumers to purchase the Products."  (FAC, ¶ 27).  In addition, Plaintiffs allege

8   that "at all relevant times," each of the Defendants, including the Individual

9   Defendants, "were, and still are, aware, or should have been aware, that the Products

10  cannot be legally marketed as dietary supplements because they contain DMAA, a

11  dangerous, synthetic stimulant, that use of the Products has serious and medically

12  risky adverse side effects, and that use of the Products does not produce the results

13  promised and/or cannot produce the promised results without serious adverse side

14  effects . . . [and] [n]evertheless, Defendants market the Products as safe and

15  effective dietary supplements, and fail to inform consumers of the true facts."

16  (FAC, ¶ 26.)  Thus, Plaintiffs have alleged that the Individual Defendants *directly*

17  *participated* in the wrongful conduct alleged in the FAC.

18       Under an alternative path to personal liability, an individual defendant is

19  liable under the UCL, FAL or CLRA if he directs, controls or approves the wrongful

20  conduct, or indirectly participates in, or aids and abets, such conduct.  *Toomey*, 157

21  Cal. App. 3d at 15 [citing *People* v. *Bestline Products, Inc.*, 61 Cal. App. 3d 879,

22  918-19 (1975)]; *In re Jamster,*2009 U.S. LEXIS 43592, at *26 (allegations

23  defendant participated in or controlled unlawful advertising scheme and wrongful

24  conduct of third parties sufficient for imposition of liability under UCL, FAL and

25  CLRA).  Plaintiffs go on to allege that each of Defendants, including the Individual

26  Defendants, "aided and abetted and knowingly assisted each other in their wrongful

27  conduct as herein alleged."  (FAC, ¶ 28.)  Thus, Plaintiffs have also alleged that the

28  Individual Defendants have indirectly participated in, approved, and aided and

1   abetted the wrongful conduct alleged in the FAC.

2        Under any of the above theories of liability, the wrongful conduct of the BPI

3   Defendants in California may be imputed to the Individual Defendants for purposes

4   of specific personal jurisdiction.  *See, e.g., American Int'l Airways v. Kitty Hawk*

5   *Group*, 834 F. Supp. 222, 225 (E.D. Mich. 1993) (where corporation is responsible

6   for its subsidiary's decision to undertake in-state activities, the parent corporation

7   should, in all fairness, be within the state court's jurisdictional reach.

8             *(3)    Plaintiffs have adequately alleged alter*

9                    *ego liability as to the Individual*

10                   *Defendants.*

11       The Individual Defendants may also have personal liability for the wrongful

12   conduct of the BPI Defendants based on the existence of an alter ego relationship

13   between the Defendants.  "'If a corporation is an alter ego of an individual or

14   another corporation, then the district court may disregard the corporate form and

15   exercise personal jurisdiction over the other individual or entity.'"  *Britesmile*, 2005

16   U.S. Dist. LEXIS 37704, at *15.  In order to allege alter ego liability, a plaintiff

17   must allege that there is such unity of interest and ownership that the separate

18   personalities of the corporation and the individual no longer exist, and that, if the

19   alleged wrongful acts are treated as those of the corporation alone, an inequitable

20   result will follow.  *Id. at **16-17; see also Associated Vendors, Inc. v. Oakland*

21   *Meat Co.*, 210 Cal. App. 2d 825, 837 (1962);

22       Plaintiffs allege in the FAC "at all times herein mentioned, there existed a

23   unity of interest and ownership between and among the Defendants such that any

24   individuality and separateness between and among them have ceased to exist such

25   that each Defendant is the alter ego of each of the other Defendants, and they should

26   not be allowed to evade justice by asserting the corporate or other limited liability

27   veil."  (FAC, ¶ 24.)  These allegations are adequate to put the Individual Defendants

28   on notice that Plaintiffs have raised the theory of alter ego liability, and that is all

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  that is required under the Federal Rules' liberal notice pleading requirement.  *See*

2  Federal Rule of Civil Procedure 8(a).

3        Federal courts have uniformly upheld a policy of liberally construing

4  complaints to keep alleged alter ego parties in, rather than excluding them.  *See*, *e.g.*,

5  *Smith v. Simmons*, 2008 U.S. Dist. LEXIS 21162, **33-34 (E.D. Cal. 2008) ("While

6  Plaintiff has not factually described how Simmons failed to treat the corporation as a

7  distinct entity or what inequity will result from these circumstances. . . Defendants

8  are nonetheless clearly on notice of Plaintiff's alter ego claim and can frame a

9  defense.  Discovery may show different facts, but Plaintiff has sufficiently alleged

10  an alter ego theory of liability against Defendant Simmons for a breach of contract

11  claim."); *In re Napster, Inc. Copyright Litigation*, 354 F. Supp. 2d 1113, 1122 (N.D.

12  Cal. 2005) (holding that an allegation that one of the major shareholders had

13  "essentially full operational control" over the corporate entity during a specified

14  period was sufficient to justify allowing plaintiffs to proceed on an alter ego theory);

15  *Legacy Wireless Services, Inc. v. Human Capital, L.L.C.*, 314 F. Supp. 2d 1045,

16  1058 (D. Or. 2004) (holding that because defendant challenged pleading in motion

17  to dismiss, the court could not at such an early stage hold that plaintiff "beyond

18  doubt" could not make an alter-ego showing [citing Conley v. Gibson, 355 U.S. 41,

19  45 (1957)]).  Here, the Individual Defendants are clearly on notice of Plaintiffs' alter

20  ego theory of liability.

21          *(4)    The case decisions cited by Defendants*

22                    *are not applicable here.*

23        Defendants cite *Clarus Transphase Scientific, Inc. v. Q-Ray, Inc.*, 2006 U.S.

24  Dist. LEXIS 60824 (N.D. Cal. Aug. 16, 2006) for the proposition that the Individual

25  Defendants mere participation in the design and marketing of Products as officers of

26  the BPI Defendants working in Florida cannot support the exercise of personal

27  jurisdiction by this Court.  As a threshold matter, the *Clarus Transphase Scientific*

28  case is specifically designated as "NOT FOR CITATION," and thus Defendants'

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  citation of the case is improper.  But the case is inapplicable in any event since the

2  court found that, in action for trade redress, the assertion of *general jurisdiction* over

3  a corporation based on its continuous contacts with the forum state unrelated to the

4  subject matter of the litigation could not give rise to *specific jurisdiction* over a

5  controlling corporate officer. *Id.* at **9-10.

6      Similarly, the alter ego case decisions on which Defendants principally rely

7  are not applicable here.  *See, e.g., 3D Systems, Inc. v. Aarotech Laboratories, Inc.*,

8  160 F. 3d 1373, 1380 (Fed. Cir. 1998) (in patent infringement action, plaintiff

9  presented appellate court with no evidence of alter ego relationship between

10  corporation and corporate officer, and no legal authority suggesting the corporate

11  veil should be pierced); *Britesmile*, 2005 U.S. Dist. LEXIS, at **14-18 (in patent

12  infringement action, court determined there was no evidence to support a finding of

13  an alter ego relationship between two corporate counter-defendants such that the

14  wrongful conduct of one corporation could be imputed to the other for purposes of

15  asserting general personal jurisdiction); *Colt Studio, Inc. v. Badpuppy Enterprise, et*

16  *al.*, 75 F. Supp. 2d 1104, 1111 (C.D. Cal. 1999) (in trademark and copyright

17  infringement action, plaintiff failed to adequately allege an alter ego relationship

18  between corporation and corporate officers and thus court could not impute

19  corporation's conduct to officers for personal jurisdiction purposes).

20      The cases cited by Defendants involve trademark, patent or copyright

21  infringement claims where, unlike the instant case, the non-resident defendant's

22  contacts with the forum state were attenuated, at best.  Moreover, the decisions in

23  those cases do not change the fact that the Court must accept as true all

24  uncontroverted allegations in the FAC.  Defendants have offered no evidence

25  whatsoever to controvert Plaintiffs' allegations that, as a result of their control of the

26  corporate BPI Defendants, and their direct participation in and aiding and abetting

27  of the wrongful conduct of the BPI Defendants in California, the Individual

28  Defendants are personally liable for the BPI Defendants' conduct in violation of

1  California's consumer protection statutes, and such conduct may be imputed to the

2  Individual Defendants for purposes of specific personal jurisdiction.  Furthermore,

3  Defendants have offered no evidence whatsoever to controvert Plaintiffs alter ego

4  allegations and, for this reason as well, the wrongful conduct of the BPI Defendants

5  in California may be imputed to the Individual Defendants for purposes of specific

6  personal jurisdiction.

7  **4.   <u>CONCLUSION</u>**

8  For the above-stated reasons, Plaintiffs respectfully request that the Court

9  deny Defendants' motion to dismiss in its entirety.  If the Court finds that

10  Defendants' Motion has merit in any respect, Plaintiffs respectfully request that the

11  Court grant leave to amend to clarify and/or supplement the allegations in the FAC.

12

13  DATED: February 6, 2012          **WASSERMAN, COMDEN,**

**CASSELMAN & ESENSTEN, L.L.P.**

14

15

16                                By: /s/ Melissa Meeker Harnett

MELISSA MEEKER HARNETT

17                                Attorneys for Plaintiffs,  CLINT ESKENAZI

and CAMDEN BRADY, individually, and on

18                                behalf of all others similarly situated,

19

20

21

22

23

24

25

26

27

28

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1016199.1

24

BC473388

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT